**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **WELLS FARGO BANK, NATIONAL ASSOCIATION, *etc.*,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LAUREL CORPORATE CENTER, LLC, *et al.*,**<br><br>**Defendants.** | **Case No. 25–cv–01185–ESK–EAP**<br><br>**OPINION** |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on plaintiff Wells Fargo Bank, National Association's[1] motion for partial summary judgment. (ECF No. 117.)[2] Defendant Asher Roshanzamir filed a declaration in opposition (ECF No. 118 (Roshanzamir Decl.)),[3] and Wells Fargo replied (ECF No. 119 (Wells Fargo Reply Br.)). For the following reasons, the motion will be granted.

[1] Wells Fargo brings the underlying action as trustee of a commercial mortgage-backed securities trust. (ECF No. 43 (Am. Compl.) p. 4.)

[2] Wells Fargo seeks summary judgment as to Count 1, Count 2, and Count 3 of the amended complaint as to defendants Laurel Corporate Center, LLC and Asher Roshanzamir and Count 1 and Count 3 of the amended complaint as to non-contesting defendants Engie Resources LLC, BrightView Landscapes LLC, and F.M.A. Contracting & Mechanical Constructions, Inc.

[3] Roshanzamir is named as a party defendant in his individual capacity as guarantor of the subject loan obligations. (Am. Compl. p. 3.) He files the declaration in opposition on his own behalf and on behalf of Laurel Corporate Center. (Roshanzamir Decl. ¶ 2.)

## I. FACTUAL BACKGROUND

### A. The Loan and Loan Documents

This case concerns a mortgage on real property in Mount Laurel, New Jersey. (ECF No. 117–7 (Mortgage) p. 23.) The property is owned by Laurel Corporate Center. (*Id.* p. 6.) On December 29, 2015, Laurel Corporate Center obtained a loan in the amount of $48,500,000 from The Bank of New York Mellon pursuant to a loan agreement.[4] (ECF No. 117–5 (Loan Agreement).) On that same day, Laurel Corporate Center entered into a cash management agreement (ECF No. 117–12 (Cash Management Agreement)) and a Deposit Account Control Agreement (DACA) (ECF No. 117–13) with The Bank of New York Mellon. Roshanzamir executed the guaranty. (ECF No. 117–14.)

Laurel Corporate Center issued a promissory note. (ECF No. 117–6 (Note).) Payment of the note was secured by a mortgage. (Mortgage p. 6.) Laurel Corporate Center delivered a separate Assignment of Leases and Rents that same day. (ECF No. 117–11 (ALR) p. 6.) The mortgage and ALR were recorded on February 9, 2016. (*Id.* p. 2; Mortgage p. 2.) The Bank of New York Mellon filed a UCC–1 financing statement in Burlington County, New Jersey. (ECF No. 117–9.)

On May 26, 2016, The Bank of New York Mellon assigned its rights, title, and interest in the note, the loan agreement, the mortgage, and the ALR (collectively, the loan documents) to Wells Fargo (ECF No. 117–15 (Mortgage Assignment); ECF No. 117–16 (ALR Assignment); ECF No. 117–17 (General Assignment)), endorsing the note via an attached allonge (Note p. 7). The assignments of the mortgage and ALR were recorded on July 21, 2016. (Mortgage Assignment p. 2; ALR Assignment p. 2.) The assignment of the

[4] Section 17.2(A) of the loan agreement provides that New Jersey law governs the creation, perfection, priority, and enforcement of the security interests in the property. (Loan Agreement pp. 89, 90.)

UCC–1 to Wells Fargo was recorded on September 12, 2016 (ECF No. 117–18 p. 2), and was continued (ECF No. 117–19; ECF No. 117–20). On October 6, 2021, Wells Fargo filed a UCC financing statement amendment with the Delaware Department of State. (ECF No. 117–21.)

### B. <u>Events of Default</u>

On November 21, 2022, Gallagher Benefit Services, Inc. sent written notice to Laurel Corporate Center terminating its lease effective at the end of the lease term and remitted half of the required lease termination payment. (ECF No. 117–29 (Gallagher Notice).) Section 4.14(f) of the loan agreement required Laurel Corporate Center to notify Wells Fargo within five days of receiving the payment from Gallagher and place the payment in reserve with Wells Fargo within two business days. (Loan Agreement p. 35.) By letter dated December 15, 2023, Wells Fargo demanded that Laurel Corporate Center turn over the overdue payment. (ECF No. 117–31 (Dec. 15, 2023 Notice) p. 3.) Wells Fargo further advised that Laurel Corporate Center's failure to remit payment constituted an event of default under Section 10.1(a) of the loan agreement (Lease Event Default). (*Id.*)[5]

Under Section 4.14(b) of the loan agreement, Laurel Corporate Center was prohibited from entering into any "Major Lease"—defined as a lease demising 7 percent or more of the property's gross leasable area—without Wells Fargo's prior consent. (Loan Agreement pp. 34, 105.) Section 6.1(a) prohibited Laurel Corporate Center from causing or permitting a legal or beneficial interest in the

[5] Under Section 10.1(a) of the loan agreement, it is an event of default "if [Laurel Corporate Center] fail[s] to (i) pay when due (A) any sums which by the express terms of this Agreement and the other loan documents require immediate or prompt payment without any grace period, (B) any monthly Debt Service and any amount required to be paid into the Reserve Funds, or (C) any sums which are payable on the Maturity Date, or (ii) pay within five (5) days when due any other sums payable under this Agreement or any of the other Loan Documents." (Loan Agreement p. 68.)

property, absent several explicit exceptions. (*Id.* pp. 45, 46.) On August 24, 2023, Laurel Corporate Center executed a commercial lease with Lockheed Martin Corporation (Lockheed Lease) that exceeded the area threshold for a Major Lease. (*See* ECF No. 117–30 (Lockheed Lease).) Because Laurel Corporate Center failed to obtain Wells Fargo's consent, the Lockheed Lease constituted both a breach of Section 4.14(b) and an unauthorized prohibited transfer in violation of the transfer restrictions in Section 6.1(a). (Loan Agreement pp. 34, 45, 46.) These violations triggered Events of Default under Sections 10.1(e) and 10.1(r) of the loan agreement (collectively, the Major Lease Default). (*See id.* pp. 68, 70; ECF No. 117–32 (Apr. 17, 2024 Default Notice) p. 3.)

Starting on February 6, 2024, Laurel Corporate Center failed to make its required scheduled monthly payment (Payment Defaults). (*See* Apr. 17, 2024 Default Notice p. 3.) On April 17, 2024, Wells Fargo issued a notice of default to Laurel Corporate Center identifying the Payment Defaults, the Lease Event Default, and the Major Lease Default. (*Id.*)[6] Wells Fargo also notified Laurel Corporate Center that, pursuant to the mortgage and ALR, Laurel Corporate Center's license to collect and enjoy the rents generated by the property was revoked, and further directed Laurel Corporate Center to cooperate with the cash management agreement.[7] (*Id.* pp. 3–5.) While the Payment Defaults, the Lease Event Default, and the Major Lease Default remained uncured,

---

[6] Following the notice of default, on May 16, 2024, Laurel Corporate Center, Roshanzamir, and Wells Fargo entered into a pre-negotiation agreement. (ECF No. 117–35.) Under its terms, the parties agreed that potential loan modification discussions would not waive any existing defaults, modify the loan documents, or restrict Wells Fargo from enforcing its contractual rights and remedies. (*Id.* pp. 3, 4.)

[7] Pursuant to Sections 2(a)–(b) of the cash management agreement, a "Cash Management Account" and a "Deposit Account" were to be established into which all rents were to be deposited for the lender's benefit. (Cash Management Agreement pp. 4, 5.)

Laurel Corporate Center's failure to make the required Tax Reserve deposits or pay the property taxes due on May 1, 2024, August 1, 2024, November 1, 2024, and February 1, 2025, triggered an independent default under Section 10.1(b) of the loan agreement (Tax Default). (*See* Loan Agreement p. 68; ECF No. 117–22 (Transaction History) pp. 2–5.)

By letter dated August 16, 2024, Wells Fargo issued its second notice of default involving the Indebtedness Default and the Rent Default. (ECF No. 117–33 (Aug. 16, 2024 Default Notice).) Laurel Corporate Center failed to establish the required cash management account (Cash Management Default). (*Id.* p. 3.)

Laurel Corporate Center failed to deliver property rents to Wells Fargo as stipulated by Section 8.1(h) of the mortgage and Section 3.1 of the ALR. Both provide that during an uncured default, Laurel Corporate Center's license to collect rents is revoked and Wells Fargo is immediately entitled to possession (Rent Default). (*Id.*; *see also* Mortgage p. 13; ALR pp. 7, 8.)

Laurel Corporate Center permitted several unauthorized encumbrances to remain against the property, including a July 31, 2024 easement in favor of SBA Site Management, LLC (ECF No. 117–27 (SBA Easement));[8] construction liens recorded by F.M.A. (ECF No. 117–24 (F.M.A. Liens)); and default judgments obtained by Engie and BrightView (Lien Defaults) (ECF No. 117–23 (Engie Docs.) pp. 39–41; ECF No. 117–25 (BrightView Docs.) p. 18). The Lien Defaults resulted in outstanding liabilities including $2,040,648.47 owed to Engie, $287,606.95 owed to F.M.A., and $100,416.96 owed to BrightView. (Engie Docs. p. 40; F.M.A. Liens pp. 3, 19; BrightView Docs. p. 4.) Laurel

[8] Under Section 6.1(a) of the loan agreement, Laurel Corporate Center's execution of the SBA Easement constituted an unauthorized "Sale or Pledge"—and thus a "Prohibited Transfer"—of a legal interest in the property. (Loan Agreement pp. 45, 46.)

Corporate Center's failure to cure its violations of Section 5.1(a)(vii)'s third-party debt restrictions within ten (10) days of receiving written notice triggered a separate event of default under Section 10.1(d) of the loan agreement (Indebtedness Default). (Aug. 16, 2024 Default Notice p. 3; *see also* Loan Agreement pp. 40, 41, 68.)

Wells Fargo issued a termination and acceleration notice on January 24, 2025, citing Laurel Corporate Center's failure to deliver the information and documents requested for a potential loan modification and its discovery of additional breaches. (ECF No. 117–34 p. 3.) The notice terminated all modification discussions, accelerated the debt, and asserted Wells Fargo's intent to exercise its remedies under the loan documents and applicable law. (*Id.*)

## II. PROCEDURAL HISTORY

On February 11, 2025, Wells Fargo commenced this foreclosure action. (ECF No. 1.) It moved for the appointment of a receiver the following day. (ECF No. 3.) The Court entered the proposed receivership order on March 24, 2025. (ECF No. 30.) On April 29, 2025, Wells Fargo filed an amended complaint adding Roshanzamir as a defendant. (Am. Compl.) BrightView, F.M.A., and Engie filed non-contesting answers. (ECF No. 53 (BrightView Answer); ECF No. 54 (F.M.A. Answer); ECF No. 62 (Engie Answer).) Laurel Corporate Center and Roshanzamir each answered. (ECF No. 55 (Laurel Corporate Center Answer); ECF No. 93 (Roshanzamir Answer).)

On May 7, 2025, Wells Fargo moved for an order to show cause seeking to hold Laurel Corporate Center and Roshanzamir in contempt of the receivership order. (ECF No. 51.) The Court held a show cause hearing on May 20, 2025 and granted the motion, finding that Wells Fargo was entitled to attorney's fees related to the motion. (ECF No. 65.) The Court later entered judgment against defendants in the amount of $77,105.39. (ECF No. 120.)

Motion briefing was collectively filed on February 12, 2026 (ECF No. 117–1 (Wells Fargo Mot. Br.); Roshanzamir Decl.; Wells Fargo Reply Br.) in accordance with the Court's Appendix N order (ECF No. 111).

## III. LEGAL STANDARD

### A. <u>Motions for Summary Judgment</u>

The Federal Rules of Civil Procedure dictate that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine when "the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party'" and a fact is "'material' if it 'might affect the outcome of the suit under the governing law.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Facts and evidence are to be viewed in the light most favorable to the nonmovant. *Id.*

Local Civil Rule 56.1 provides that "the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue." L. Civ. R. 56.1(a). Local Civil Rule 56.1 further requires that the party opposing summary judgment file a responsive statement of material facts responding to each paragraph of the movant's statement, asserting agreement or disagreement, "and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." *Id.* Any statement that is not clearly and substantively denied with an appropriate citation to the record is deemed admitted pursuant to Local Civil Rule 56.1. *See Coastal Jersey Holdings, LLC v. Giordano*, Case No. 22–02024, 2023 WL 7545301, at *5 (D.N.J. Nov. 14, 2023); *see also* Fed. R. Civ. P. 56(e) (stating that—upon a party's failure to properly address an assertion of fact—a court may provide an opportunity to address that fact, consider the fact

undisputed, grant summary judgment if the movant is entitled to it, or issue any other appropriate order).

## IV. DISCUSSION

### A. <u>Wells Fargo's *Prima Facie* Right to Foreclose</u>

Wells Fargo argues that it is entitled to summary judgment because it has established its *prima facie* right to mortgage foreclosure, security interest foreclosure, and possession of the property. (Wells Fargo Mot. Br. p. 7.) Defendants concede that they "do not dispute the Loan's written terms or [Wells Fargo's] Local Civil Rule 56.1 Statement of Material Facts" but point to other circumstances "that elucidate why [Wells Fargo's] requested relief of foreclosure is inappropriate." (Roshanzamir Decl. ¶ 3.)

"The 'essential elements' necessary for a foreclosure judgment to be granted in New Jersey are 'the validity of the note and mortgage; the alleged default; and the Bank's right to foreclose.'" *Bank of N.Y. Mellon v. Walch*, Case No. 15–00724, 2017 WL 1734031, at *3 (D.N.J. May 3, 2017) (quoting *Thomas v. Jersey Mortg. Co.*, Case No. 13–00648, 2016 WL 4705449, at *6 (D.N.J. Sept. 8, 2016)). "A mortgagee establishes a *prima facie* right to foreclosure when there is proof of execution, recording, and non-payment of the mortgage." *Id.* (quoting *Wells Fargo Bank, N.A. v. Bertea*, Case No. 13–07232, 2016 WL 1182707, at *3 (D.N.J. Mar. 28, 2016)).

Here, Wells Fargo has produced evidence satisfying each element of its *prima facie* case. Under the first element, Wells Fargo has established, and defendants do not dispute, that Laurel Corporate Center executed the note and mortgage (Note; Mortgage), and that assignments were duly recorded (Mortgage Assignment; ALR Assignment; General Assignment).

Turning to the second element, Wells Fargo has established through documentary evidence that Laurel Corporate Center defaulted on its

obligations under the loan documents as a result of (1) the Lease Event Default, (2) the Payment Default, (3) the Indebtedness Default, (4) the Lien Defaults, (5) the Tax Default, (6) the Major Lease Default, and (7) the Cash Management Default. (*See* Transaction History; Engie Docs.; F.M.A. Liens; BrightView Docs.; ECF No. 117–26; SBA Easement; Gallagher Notice; Lockheed Lease; Dec. 15, 2023 Notice; Apr. 17, 2024 Default Notice; Aug. 16, 2024 Default Notice.) Defendants do not dispute that these defaults occurred. (*See* Roshanzamir Decl. ¶ 3.)

Finally, under the third element, the Court finds that the evidence presented establishes Wells Fargo's right to foreclose. "As a general proposition, a party seeking to foreclose a mortgage must own or control the underlying debt." *Walch*, 2017 WL 1734031, at *4 (quoting *Deutsche Bank Nat'l Trust Co. v. Mitchell*, 27 A.3d 1229, 1234–35 (N.J. Super. Ct. App. Div. 2011)). "[I]t is well established in New Jersey that either possession of the note or an assignment of the mortgage that predated the original complaint confers standing on a party." *Id.* (quoting *Grant-Covert v. Wells Fargo Bank, N.A.*, Case No. 15–06018, 2016 WL 901081, at *3 (D.N.J. Mar. 9, 2016)).

Here, Wells Fargo holds the loan documents as the holder of the note (Note p. 7), and as the assignee of the mortgage and ALR via the written assignments executed on May 26, 2016 (Mortgage Assignment, ALR Assignment). The Court finds that there is no genuine dispute that Wells Fargo held the note and was assigned the mortgage prior to the commencement of this action, thereby establishing its standing to foreclose as the owner of the underlying debt. *See Wilmington Trust, Nat'l Assoc. v. 24 Com. St. LLC*, Case No. 21–05498, 2023 WL 2523656, at *6 (D.N.J. Mar. 15, 2023).

### B. Defendants' Additional Arguments

The Court next turns to defenses and affirmative claims. "[A] mortgagor who opposes summary judgment has a duty to present facts to controvert a

mortgagee's *prima facie* case." *Bertea*, 2016 WL 1182707, at *3. "In a mortgage foreclosure action, defenses that fail to 'challenge the essential elements of the mortgagee's right to foreclose'—*i.e.*, the validity of the note and mortgage, the alleged default, and the right to foreclose—are not 'material' for purposes of liability." *24 Com. St. LLC*, 2023 WL 2523656, at *7 (quoting *Patch of Land Lending, LLC v. 181 Mapes Ave., LLC*, Case No. 16–09540, 2017 WL 6550483, at *2–3 (D.N.J. Dec. 21, 2017)).

In their answers, defendants assert seven affirmative defenses: (1) failure to state a claim; (2) waiver, payment, accord and satisfaction, or estoppel; (3) laches; (4) election of remedies; (5) unclean hands; (6) preclusion by documentary evidence; and (7) lack of standing. (Laurel Corporate Center Answer pp. 53, 54; Roshanzamir Answer p. 52.) Defendants fail to support any of these affirmative defenses in response to the instant motion, instead noting that foreclosure is an equitable remedy and seeking to contextualize the asserted defaults. (*See generally* Roshanzamir Decl.) These arguments are unavailing. Defendants have not presented evidence sufficient to create a genuine dispute of material fact, or to support their attempted justifications for non-payment, the incurrence of unpermitted debt, the failure to obtain required consents, and the diversion of funds. *See Bank of N.Y. Mellon v. Witty*, Case Nos. 15–00500 & 15–08486, 2020 WL 13577369, at *4–8 (D.N.J. Aug. 14, 2020) (holding that the defendant's various challenges to foreclosure "each fail[ed] as a matter of law" where they did not controvert the plaintiff's right to foreclosure).

For instance, it is undisputed that the loan documents provide no exception allowing Laurel Corporate Center to divert lease termination payments to other uses. (*See* Loan Agreement p. 35.) Indeed, defendants admit that they "did not want to make any transfers in the midst of negotiations" to "avoid any questions about moving money around," confirming

that Borrower knowingly withheld contractually mandated funds from Wells Fargo. (Roshanzamir Decl. ¶¶ 28–32.) Similarly, with respect to the Major Lease Default, defendants argue that "losing th[e] tenant would have caused greater harm … than any alleged default." (*Id.* ¶¶ 33–38.) But the record still demonstrates that Laurel Corporate Center entered into a Major Lease without obtaining Wells Fargo's prior consent. (*See* Lockheed Lease; Apr. 17, 2024 Default Notice p. 3.) The Court finds that Wells Fargo has demonstrated the absence of any genuine dispute of material fact and is entitled to judgment as a matter of law. *See GE Bus. Fin. Servs. v. Grove St. Realty Urban Renewal*, Case No. 10–02279, 2011 WL 4810145, at *3 (D.N.J. Oct. 11, 2011).

**C. <u>Non-Contesting Defendants</u>**

Wells Fargo moves for summary judgment against BrightView, F.M.A., and Engie on Count 1, mortgage foreclosure, and Count 3, security-interest foreclosure. (Wells Fargo Mot. Br. p. 29.) Each of these defendants filed an answer to the amended complaint consenting to foreclosure relief, and none has opposed the instant motion. (*See* BrightView Answer; F.M.A. Answer; Engie Answer .)

Even when a motion for summary judgment is unopposed, the Court must still determine whether the moving party is entitled to judgment as a matter of law. *See Hawkins v. Globe Life Ins. Co.*, 105 F. Supp. 3d 430, 446 n. 23 (D.N.J. 2015). As detailed above, the undisputed record establishes: (1) the validity and execution of the loan documents, (2) Laurel Corporate Center's multiple uncured defaults, and (3) Wells Fargo's standing as the assignee of the loan. *See Walch*, 2017 WL 1734031, at *3. Because Wells Fargo's motion and supporting materials, including the undisputed facts, demonstrate that Wells Fargo has met the required elements, the Court will grant Wells Fargo's motion for summary judgment against BrightView, F.M.A., and Engie.

## V. CONCLUSION

For the foregoing reasons, Wells Fargo's motion for partial summary judgment (ECF No. 117) will be granted. An appropriate order accompanies this opinion.

*/s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: September 9, 2026